**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DEBORAH KOMOROSKI, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 3-05-cv-398(WWE) |
| : | |
| STATE OF CONNECTICUT, : | |
| DEPARTMENT OF CONSUMER : | |
| PROTECTION, : | |
|     Defendant. : | |

## RULING ON DEFENDANT'S MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT

Plaintiff Deborah Komoroski alleges that her employer, the Connecticut Department of Consumer Protection ("Department"), violated Title VII by subjecting her to a hostile environment and disparate treatment based on her gender. Defendant moves for summary judgment and to strike evidence proffered in support of plaintiff's opposition to the motion for summary judgment. For the following reasons, defendant's motion to strike will be denied but the motion for summary judgment will be granted.

## BACKGROUND

Plaintiff commenced her employment as a Drug Control Agent in defendant's Drug Control Division. During her tenure, plaintiff was supervised by Herbert Strickland, Lionel Roberge,[1] Henry Karanian, and Jack Kornacki at various time from 1986 to 2000. From 2000 to 2002, John Gadea supervised plaintiff, and Sharon Milton-Wilhelm is her current supervisor.

During her tenure with the Division, plaintiff was spoken to by various

---

[1] Roberge retired in May 2003.

supervisors, including Gadea, regarding the untimeliness of her work. At certain times, plaintiff's work was reassigned to other agents.

On July 2, 2003, Stephen Caliendo, Director of Personnel, announced vacancies for two Principal Agent positions.[2] Previously, in 1999, plaintiff had been passed over for a Principal Agent position, which William Ward, then Director, bestowed upon Gadea.

In response to the 2003 announcement, plaintiff and five other candidates applied for the two Principal Agent positions by submitting an application, performance appraisals from the prior three years, and a resume. The application process also required an interview by a three-member panel comprising Caliendo, Gadea, and Edwin Rodriguez, Deputy Commissioner.

Pursuant to the job description, the Principal Agent must have at least three years of experience as a Drug Control Agent. The New England Health Care Employees Union requires:

> In cases of promotion or lateral transfer to noncompetitive positions, when there is no appreciable difference between the ability of the competing candidates to perform the duties of the job, seniority . . . shall govern after consideration of affirmative action goals.

Two applicants, Sharon Milton-Wilhelm and Jerry DeStefano, were ultimately selected for the positions based on the comments in their performance appraisals, educational credentials, supervisory experience, and interview performance. The decision of the panel was unanimous in its selection of DeStefano and Milton-Wilhelm for the Principal Agent positions.

---

[2]Principal Agent represents a position above Drug Control Agent.

The panel reviewed performance appraisals of Milton-Wilhelm, DeStefano and plaintiff. Each candidate was rated on the appraisals as "Excellent." However, unlike the appraisals of Milton-Wilhelm and DeStefano reviewed by the panel, plaintiff's performance appraisals contained no narrative comments praising her skills.

Plaintiff had obtained a Bachelor of Science in Pharmacy; Milton-Wilhelm held a Bachelor of Science in Pharmacy and in Sociology; and DeStefano held a Masters in Business Administration and a Bachelors of Science in Pharmacy.

In reviewing the experience of the candidates, the interview panel noted DeStefano's role as Lead on the Hospital Team, his adjunct professor position, and his work as a Municipal Police Training Council Instructor. The panel noted Ms. Milton-Wilhelm's experience as the Board Administrator for the Pharmacy Commission, and as a Municipal Police Training Council Instructor. The panel found that these experiences demonstrated supervisory skills, an ability to handle assignments in addition to the regular agent caseload, and initiative in assuming additional assignments. Additionally, the panel viewed Ms. Milton-Wilhelm's experience as the Board Administrator for the Pharmacy Commission as relevant to the Division's work, since it involved review of investigations of pharmacists working without a license.

By contrast, the panel found that plaintiff's experience as a member of the Hospital Team did not demonstrate the equivalent level of supervisory experience, and that her position as Vice-President of the Narcotics Enforcement Officers Association did not entail supervisory experience and did not represent an additional work assignment. As her former supervisor, Gadea was also aware that plaintiff had in the past been criticized for untimely handling of her case assignments.

Each member of the panel also rated plaintiff's interview performance below that of DeStefano and Milton-Wilhelm.

In 2003, Gadea became Director of the Department. In summer 2003, Gadea assigned new computers to all of the agents except for himself and Komoroski due to a shortage in the purchase order. However, Ms. Komoroski received a computer within two months of the first order.

As Director, Gadea instructed the supervisors within the Department to rate agents' work more accurately on performance appraisals. He instructed that a rating of an agent's "Quantity of Work" be rated as "Excellent" only if the agent demonstrated a capacity to take on additional work assignments.

As plaintiff's supervisor since August 2003, Milton-Wilhelm has found that plaintiff has difficulty in managing her workload. In a 2004 appraisal report of plaintiff, Milton-Wilhelm rated plaintiff an overall "Excellent" and between "Average" and "Good" in the category of "Quantity of Work." She also commented that plaintiff needed to make improvements in clearing out the backlog of cases. In a 2005 appraisal, Milton-Wilhelm rated plaintiff "Excellent" and "Good" in the category of "Quantity of Work." She noted that plaintiff needed to improve her "attention to timeliness of reports." Upon plaintiff's request, Milton-Wilhelm agreed to lighten plaintiff's workload.

As Principal Agents, Milton-Wilhelm and DeStefano retain discretion as to whether other agents should assist in the training of new agents. DeStefano has called upon the assistance of male agents and female agents for training new agents. Milton-Wilhelm has used a female agent to assist her in new agent training.

Plaintiff complains that engagements for professional talks have been unfairly

4

assigned since 2003. Milton-Wilhelm and DeStefano have been assigned police talks due to their additional Municipal Police Academy work assignment. Other agents have been assigned pharmacy talks that are related to additional work assignments on a prescription error project.

Prior to 2003, plaintiff was assigned nursing home and high school talks. Subsequent to 2003, no nursing home or high school talks have been assigned to any agent.

## DISCUSSION

**Defendant's Motion to Strike**

Defendant has moved to strike plaintiff's Local Rule 56(a)(2) denials of the defendant's statement of undisputed facts as noncompliant with the local and federal rules of procedure. Specifically, defendant asserts that plaintiff has set forth mistruths, opinions, inadmissible hearsay, inconsistencies, mischaracterizations of testimony, and nonsensical denials. Defendant also moves to strike portions of plaintiff's affidavit that are conclusory, self-serving or hearsay.

The Court will deny the motion to strike but considers all material in light of the evidentiary record as a whole in determining the existence of factual disputes.

**Motion for Summary Judgment**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849

(1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)

. If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Gender Discrimination

Plaintiff claims that defendant's failure to promote her in 2003 constitutes gender discrimination.[3] To establish a prima facie Title VII gender discrimination claim based on a failure to promote, plaintiff must show that 1) she is a member of a protected class; 2) she applied for a position for which she was qualified; 3) she was rejected for the position; and 4) the circumstances give rise to an inference that there was a discriminatory motive. Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000);

---

[3] Plaintiff poses no opposition to defendant's argument that a failure to promote claim based on 1999 conduct is time barred. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Taylor v. City of New York, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003).

see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

For purposes of ruling on this motion for summary judgment, the Court assumes that plaintiff has established a prima facie case of gender discrimination based on defendant's failure to select her for a Principal Agent position.

As its legitimate non-discriminatory business reason for the decision to select other candidates, defendant proffers that the selected candidates demonstrated more attractive skills and qualities for the Principal Agent position.

An employer may "choose among equally qualified candidates, provided the decision is not based on unlawful criteria." Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981). In general, the Court should not second guess business decisions, and evidence that an employer merely used poor business judgment as to an employment decision is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons. Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988). A plaintiff may defeat summary judgment for the defendant by demonstrating that the employer's business decision was so lacking in merit as to call into question its genuineness. See Gerardi v. Hofstra University, 897 F. Supp. 50, 58 (E.D.N.Y. 1995) (plaintiff made a sufficient showing to bar summary

judgment where her qualifications may have been superior to two younger applicants who were hired as well as to ten applicants who received call-back interviews).

In this instance, the panel noted that the performance appraisals for DeStefano and Milton-Wilhelm indicated supervisory and leadership skills that plaintiff's appraisals lacked. Plaintiff's interview was ranked below that of the selected candidates. Her application materials also failed to demonstrate an ability to manage her case load equal to that of DeStefano and Milton-Wilhelm. Accordingly, the evidence adduced does not indicate that the selection decisions were so lacking in merit as to raise an inference of gender discrimination. Further, no evidence indicates that the decision was based on illegal criteria. Summary judgment will enter in defendant's favor.

Hostile Environment

A hostile work environment exists in violation of Title VII where the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 20 (1993). To prevail on a hostile work environment claim, the plaintiff must show both 1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the condition of her employment, and 2) that a specific basis exists for imputing to the employer the conduct that created the hostile environment. Briones v. Runyon, 101 F. 3d 287, 291 (2d Cir. 1996). Relevant factors include the 1) frequency of the discriminatory conduct, 2) the severity of the conduct, 3) whether it is physically threatening or merely an offensive utterance, and 4) whether it unreasonably interferes

with an employee's work performance. Harris, 510 U.S. at 23. "The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility." Leibovitz v. New York City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001).

Isolated remarks or occasional episodes of harassment will not merit relief under Title VII; the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive. See Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004). However, one act that is sufficiently severe may alter the plaintiff's conditions of employment without repetition. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998), abrogated on other grounds, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Of course, a plaintiff claiming a sex-based hostile work environment under Title VII must demonstrate that the conduct occurred because of her sex. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).

Plaintiff's claim of hostile environment is based on the following conduct: 1) sexual comments and one offensive touching by Roberge in his position of Principal Agent and Director from 1986 through 2003; 2) her failure to be promoted to a Principal Agent position in 1999; 3) failure to be promoted to the Principal Agent position in 2003; 4) lower ratings on "Quantity of Work" in her performance appraisals by Milton-Wilhelm in 2004; 5) Gadea's failure to assign her a computer in 2003; 6) lack of training opportunities after 2003; and 7) lack of assignments for professional talks after 2003.

In this instance, the discriminatorily hostile environment is alleged to be the

product of both sex-specific abuse by Roberge and other adverse treatment. Plaintiff must demonstrate that all of the alleged abuse was on account of her sex by either 1) showing that Roberge's sex-based abusive conduct indicates that the other adverse treatment was also on account of sex, or 2) rely on the disparate treatment burden-shifting framework of McDonnell Douglas appropriate for circumstantial proof. Raniola v. Bratton, 243 F.3d 610, 622 (2d Cir. 2001). In Raniola, the plaintiff was allegedly subjected to offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage and one serious public threat of physical harm within a period of two and a half years. The fact that the individual who made sex-based comments to the plaintiff also imposed inordinately high work quotas upon her raised an inference that all of the adverse action by that same person was motivated by plaintiff's sex. See also Howley, 217 F.3d at 149 (prior derogatory sex-based comments by co-worker permitted inference that further abusive treatment by same person was motivated by sex-bias).

In the instant case, plaintiff fails to raise an inference that all of the alleged adverse treatment was motivated on account of plaintiff's sex.

In her deposition, plaintiff testified that prior to 1992, during a six-year period, a "couple times a week," Roberge made "off-handed remarks about other people with sexual connotations," and one time inappropriately touched her breast. Plaintiff explained that after 1992, she had less contact with Roberge and was only subjected to his sexual comments on an intermittent basis. Plaintiff never complained to anyone other than her husband about Roberge's conduct.

The record discloses no inference of a connection between Roberge's sex-based comments or conduct and the other adverse employment action. The employment decisions involved a number of different decisionmakers of both genders, and largely occurred in 2003, more than ten years after 1992 when plaintiff was no longer in regular contact with Roberge. The evidence indicates that plaintiff's treatment relevant to promotions, performance appraisals, professional assignments, computer assignment and training opportunities was based on her prior work performance. Further, no evidentiary material raises an inference that treatment based on plaintiff's work experience represents a pretext for sex-based motivation.

Finally, the Court finds that the alleged conduct of Roberge, although repugnant if true, does not alone raise an inference that plaintiff suffered from an environment that was permeated with discriminatory intimidation so severe or pervasive as to alter the condition of her employment. This case resembles Quinn, wherein the Second Circuit held that plaintiff could not establish a hostile environment based on evidence that defendant had told her that "she had been voted the 'sleekest ass' in the office" and had "deliberately touched" her breasts. 159 F.3d at 768. Here, plaintiff's description of Roberge's sexual comments is vague, the alleged offensive touching appears to be an isolated incident, and plaintiff's contact with Roberge was intermittent after 1992. The Court will grant the motion for summary judgment on the hostile environment claim.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Strike [# 71] is DENIED; and defendant's Motion for Summary Judgment [Doc. No. # 54] is GRANTED. The Clerk is directed to close this case.

_____/s/_____

Warren W. Eginton, Senior U.S. District Judge

Dated at Bridgeport, Connecticut this 25th day of April, 2007.